RECEIVED
SDNY PRO SE OFFICE
2016 JUN 14  PM 12: 35

Audrey Hensler
185 Pebble Beach Drive
Mays Landing, NJ 08330
609-813-0651

16CV4493

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------

**AUDREY HENSLER**

       Plaintiff,

   v.


**NEW YORK STATE DEPARTMENT OF**
**ENVIRONEMTAL CONSERVATION**

**MS. TAMARA  A. GRECO**

     Defendants.

-------------------------------------------

## VERIFIED COMPLAINT


    Plaintiff Audrey Hensler by way of Verified Complaint against defendants New York State Department of Environmental Conservation and Ms. Tamara A. Greco hereby says as follows:

## PRELIMINARY STATEMENT

    1.  This is an action brought under 42 USC section 1983 arising from the defendants actions, taken under color of state law, which have deprived plaintiff, and continue to deprive plaintiff of her constitutional protected property interest, including plaintiff's right to rely upon and utilize her right to build or sell the lot known as 401 Paterson Avenue, Staten Island, NY.

2.  In this action, plaintiff seeks, among other things a declaration pursuant to 28 USC section 2201, et seq, that defendants are each prohibited from excluding plaintiff from building on said lot.

3.  Plaintiff also seeks among other things, entry of a preliminary and permanent injunction enjoining each defendant from further excluding plaintiff from building on said lot.  If defendants are not immediately enjoined, and continue to be enjoined while this suit is pending, plaintiff will suffer immediate and ongoing irreparable harm.

**JURISDICTION**

4.  This court has jurisdiction over this action pursuant to its original jurisdiction  as set forth in 28 USC sections 1331 and 1343 and 42 USC sections 1983, in that plaintiff alleges a violation of her rights under the Fourteenth Amendment to the United States Constitution by persons acting under color of State Law.

5.  This court has supplemental jurisdiction over plaintiffs state and common law claims by virtue of the provisions of 28 USC section 1367 (a) because those claims form part of the same case or controversy under Article III of the United States Constitution.

6.  Venue is proper in this district under 28 USC section 1391 because a substantial part of the events or omissions giving rise to plaintiffs claims, as set forth heron, have occurred and continue to occur with the district.  Plaintiff is a New Jersey resident, defendants are both New York residents creating a diversity 28 USC section 1441 and section 1446.

**PARTIES**

7.  Plaintiff is an individual resident of New Jersey with an address of 185 Pebble Beach Drive, Mays Landing, NJ 08330.

8.  Defendant New York State Department of Environmental Conservation with a principle place of business at 47-40 21st street, Long Island City, NY 11101

9.  Defendant Tamara A. Greco with a principle place of business at 47-40 21st street, Long Island City, NY 11101

**FACTS**

10.  The property at 401 Paterson Avenue, Staten Island, New York have been in my family's possession since October 11, 1938.  For approximately 78 years my family has been paying taxes on this building lot which was recorded in the Office of the Clerk of Richmond County at page 149, on the 16th day of July, 1925.

11.  This map was amended and subdivision of Cromwell property was modified in June, 1925 and has been a building lot since that date.  Attached as exhibit A is the deed.

12.  New York City has recognized this lot as a buildable lot as they even gave a mailing address and post office number with the address 401 Paterson Avenue, Staten Island, NY.

13.  This lot meets all New York City codes for being classified as being a buildable lot.

14.  The proposed builder on this lot Richard Annunziata, 77 Austin Road, Mahopac, NY 10541 applied on November 20, 2015 for approvals that were required by New York City from the Department of Environmental Conservation.

15.  Tamara A. Greco was the analyst from the Department of Environmental Conservation which she then deemed incomplete on December 23, 2015.   Please see exhibit B incomplete application.

16.  In Ms. Greco analyst for the property she makes a determination on how big a usable yard should be.  In the third paragraph, she quotes "the proposed usable yard space appears to be impractical."   Attached as exhibit C is the Notice of Incomplete Application.

17.  Ms. Greco as employee for the New York State Environmental Conservation is now deciding after 78 years of ownership and paying taxes that in her opinion the proposed usable yard space appears to be impractical.   This statement is capricious and unfair as Ms. Greco nor the New York State Department of Conservation Board is to determine practical or impractical yard space.

18.  Ms. Greco does not indicate what is practical to her or what is practical to her agency.

19.  Mr. Peter Calvanico the engineer on this job replies to Ms. Greco's concerns in a letter dated February 9, 2016.  See exhibit D.   Mr. Calvanico explains in #C the project is compatible with public health and welfare since proposed residential use on property is consistent with adjoining properties.  The adjoining lot with similar dimensions have been recently approved by this agency Department of Environmental Conservation for a single family dwelling and has been constructed.

20.  Mr. Calvanico in an effort to appease Ms. Greco agrees to reduce the project in size that would increase set back to wetlands from building to fifteen feet at the closest point.

21.  Ms. Greco's also concerns from the damage zone from Hurricane Sandy was addressed in Mr. Calvanico's letter #7 where the elevations comply with FIRM Maps developed after Hurricane Sandy.   In Mr. Calvanico's letter of February 9, 2016 he addresses all 8 issues that Ms. Greco had deemed the permit as incomplete for.

22.  In a letter dated March 9, 2016, letter from Ms. Greco states your application for DEC permit is complete and a notice will be published in the newspaper notifying of the complete application.  See exhibit E.

23.  On June 2, 2016 a notice of permit denial was issued by the NY State DEC.  See exhibit F.

24.  In the denial letter on the last page the DEC amazingly takes the position the construction of the proposed residence would increase the likelihood of the surrounding areas experienced destructive flooding which would threaten multiple existing residents.  They make this statement after approving less then fifteen feet away another new single family residence that would have the same effect on the surrounding area which would threaten multiple existing residents.  This statement is a clear violation of the Fifth Amendment Rights I have by practically taking my property away after 78 years and deem it unbuildable for the protection of adjoining residences.  I also believe this statement violates my civil rights as Ms. Greco and the DEC are denying me the same rights to build on my land as they gave to my neighbor within the last year fifteen feet away on practically the same sized lot.

26.  In the DEC denial letter they also site to the fact "the activities are also not consistent with the permits previously issued for neighboring properties and State and City post hurricane sandy efforts to reduce the flood risk faced by homeowners.  For these reasons the activities proposed in your application would not be compatible with the public health and welfare."  This DEC denial letter clearly shows post hurricane sandy efforts to reduce the flood risk is their main reason to deny the approval to build on this property.   Although in Mr. Calvanico's letter he addresses all hurricane sandy concerns and again this is just an effort to take my property through the denial process.


## COUNT I
## Preliminary and Permanent Injunction

27.  Plaintiff repeats and realleges the allegations in paragraphs 1-26 of this Verified Complaint as if set forth fully at length herein.

28.  Despite the fact that this building lot is the same size as the adjoining lot, New York State DEP and Tamara Greco approves the adjacent lot and denies the plaintiff's lot after paying taxes on a subdivided approved lot.  New York DEP and Tamara Greco are State actors for purposes of the Fourteenth Amendment and 42 USC Section 1983.  There is a significantly close nexus between the New York DEC and Tamara Greco with regard to their joint decision to unlawfully deny the plaintiff's right to construct a house on approved subdivided lot, approved by the City of New York.

29.  The unlawful conduct of the defendants in denying plaintiff as for described, took place and continues to take place on plaintiff's property in Staten Island, NY.

30.  If defendants are allowed to continue to deny plaintiff's right to build, plaintiff will continue to suffer irreparable harm.

31.  The public interest favors the protection of plaintiff's constitution rights.

WHEREFORE, plaintiff seeks judgment in her favor awarding:

a.  Immediately temporary restraints, a preliminary injunction and thereafter a permanent injunction enjoining each of the defendants from denying the plaintiff approvals to construct a one family residence.

b.  Such other relief as the Court deems just and proper.


## COUNT II
## Violation of 42 USC Section 1983

32.  Plaintiff repeats and realleges paragraphs 1 through 31 of this Verified Complaint as if set forth fully at length herein.

33.  At all time relevant, defendants were acting in their individual and official capacities.

34.  East of the defendants actions, taken under color of state law, have deprived plaintiff, and continue to deprive plaintiff of her constitutionally protected property interest.

35.  Each of the defendants actions, taken under color of state law, have deprived plaintiff, and continue to deprive plaintiff, of her constitutionally protected liberty interests, without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

36.  Defendants unlawful refusal to allow plaintiff to build on said lot as aforedescribed is supported and encouraged by the State.

37.  As a result of the defendants unjustified and unlawful actions as aforedescribed, plaintiff is being deprived, without due process of law in violation of the Fourteenth Amendment to the United States Constitution, of her constitutionally protected property interest in not allowing to build on said lot.

38.  As a result of defendants unjustified and unlawful actions as aforedescribed plaintiff is being deprived and continues to be deprived, without due process of law in violation of the Fourteenth Amendment to the United State Constitution, of her constitutionally protected liberty interest.

39.  To date, defendants have not provided no valid justification for their decision to not allow plaintiff to build on said lots.

40.  Defendants unlawful conduct as aforedescribed was knowing and intentional.

41. As a result of defendants unlawful conduct as aforedescribed, plaintiff has suffered and will continue to suffer irreparable harm.

WHEREFORE, plaintiff seeks judgment in her favor awarding:

a. Damages.

b. Punitive damages and

c. Such other relief as the Court deems just and proper.

**VERIFICATION**

I, Audrey Hensler, hereby verify on personal knowledge, that the factual statements made in the foregoing complaint are true, with the exception of those statements made in paragraph which are specifically alleged upon information and belief and which otherwise are matters of public information.

Dated: June 10, 2016

Audrey Hensler

# EXHIBIT "A"

# *VESTING DEED*



The grantor, in compliance with Section 13 of the Lien Law, covenants that the grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and that the grantor will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

AND the said party of the first part covenants that she has not done or suffered anything whereby the said premises have been encumbered in any way whatever.

IN WITNESS WHEREOF, the party of the first part has hereunto set her hand and seal the day and year first above written.

In presence of:

ELIZABETH SCHILLING L. S.

L. S.

STATE OF NEW YORK COUNTY OF RICHMOND ss.:

On the 18th day of May, nineteen hundred and seventy before me came ELIZABETH SCHILLING

to me known and known to me to be the individual described in, and who executed, the foregoing instrument, and acknowledged to me that she executed the same.

JAMES G. KINSELLA

JAMES KINSELLA
Notary Public, State of New York
No. 43-2126320
Qualified in Richmond County
Commission Expires March 30, 1969

5916

ELIZABETH SCHILLING

TO

ELIZABETH SCHILLING and MARGARET THEYHER

# Deed

BARGAIN AND SALE

Dated, May 18, 19 70

The land affected by the within instrument lies in Section 4 in Block 3475 on the Land Map of the County of Richmond

RECORD AND RETURN TO

JAMES G. KINSELLA, ESQ.
2246 Clove Road
Staten Island, New York 10305

Reserve this space for use of Recording Office.

RETURN RPT

RECEIVED
COUNTY CLERK'S OFFICE

'70 MAY 26 PM 3:14

RICHMOND CO.
3040

Recording Fee $6 —

Recorded in the Richmond County Clerk's Office on MAY 26 1970 at 3:14 M in Liber 1621 Page 246 of Deeds and Indexed under Block Number 3475 On the "Land Map of the County of Richmond"

Augustine B. Carey, County Clerk

| | |
|---|---|
| TXLER | |
| BLOCK | |
| ALPH | |

LIBER 1903 PAGE 241

Digital Tax Map - New York City Department of Finance

### Digital Tax Map - New York City Dept. of Finance (5/28/2015)

STATEN ISLAND Block: 3475 Lot: 39

Copyright 2015 The City of New York

| | Borough Boundary | C50 | Condo Flag/Condo Nunber |
|---|---|---|---|
| | Tax Block Boundary | A50 | Air Right Flag/Lot Number |
| | Tax Block Number | S50 | Subterranean Right Flag/Lot Number |
| | Tax Lot Boundary | R | REUC Flag |
| 50 | Tax Lot Number | | Under Water Tax Lot Boundary |
| 50 | Condo FKA Tax Lot Number | | Other Boundary |
| 60.6 | Tax Lot Dimension | | Possession Hook |
| +/-5.5 | Approximate Tax Lot Dimension | Misc | Miscelaneous Text |
| 1300 - 1530 | Condo Units Range Label | O | Small Tax Lot Dimension |
| | Building Footprint | | Surface Water |

http://maps.nyc.gov/doitt/webmap/print.htm?z=12&p=961263,151072&a=DTM&c=dtm&f=CONDO_RANGE,LOT_FACE_SMALL&s=I:STATEN+ISLAND,3475...   1/1

EXHIBIT "B"



New York State Department of Environmental Conservation
**Notice of Incomplete Application - This is NOT a Permit**

*Application ID*: 2-6404-01325/00001

*Batch Number*:   786705

*Facility*:   Annunziata Prop B 3475 L 40
401 Patterson Ave
Staten Island, NY 10305

*Applicant*:   Richard Annunziata        *Owner ID*: 1756730
30 Freneau Ave
Matawan, NJ 07747

*Permit(s) Applied for*:   1 - Article 24 Freshwater Wetlands

*Project Location*:   in STATEN ISLAND in RICHMOND COUNTY

**Your application for Permit is incomplete.   The following items are required:**

1. Applicant proposes to build a one family detached residence with associated parking pad, drywells, accessory structures, etc. within a regulated adjacent area of a Class I freshwater wetland. To meet the standards for permit issuance set forth in 6NYCRR 663.5, it is the Applicant's responsibility to demonstrate that the proposed project is:
a. Compatible with preservation, protection and conservation of the wetland and its benefits;
b. will result in no more than an insubstantial degradation to or loss, of any part of the wetland;
c. is compatible with public health and welfare.
Information must be provided which demonstrates that the application meets the standards for permit issuance set forth in Part 663.

2. Alternative Analysis: Proposed plan depicts an extremely reduced yard area and very limited setback from the wetland boundary. Can the project be reduced or modified to allow greater setback from the wetland boundary and increase useable yard space? What alternatives have been considered for the project? Provide an alternatives analysis.

3. Project Plans: The proposed setback from the wetland boundary is insufficient and far less than the setback required for neighboring developments. The proposed useable yard space appears to be impractical. The severely limited rear yard area will also create conditions that lead to encroachment into the proposed Area of No Land Alteration. The project should be revised to increase the setback from the Freshwater Wetlands and provide greater usable yard space.

4. Drywells & Stormwater Disposal: A review of NYSDEC records confirms the plan notation about ground water location at 6 feet below surface for adjacent lot 41. Why are the drywells proposed to be 5 feet deep? Drywell installation should be at least 3 feet above seasonal high groundwater. Please revise the size of the drywell.

5. Area of No Land Alteration:
The proposed Area of No Land Alteration doesn't provide enough development setback from the wetland. There is only 5 feet from the closest wetland point to the rear useable yard. Neighboring development provided a 22 foot setback from the wetland boundary. Applicant should revise the plans to allow for a greater setback from the wetland.

6. Deed Restriction:
Submit a draft deed restriction for the Area of No Land Alteration for review. Sample Language

is attached.

7. Flood Zone:
The subject lot lies within the damage zone from Hurricane Sandy. What flood protection measures does the Applicant plan on utilizing for the proposed structure? Are any of the proposed structural flood protection measures additional to those mandated by building codes? Does the Applicant plan on utilizing special protection measures for utilities, such as electrical systems, sanitary systems, etc.? Do the proposed base flood elevations meet the Federal Emergency Management Agency's post hurricane recommendation?

8. Fireproof Construction:
The subject property lies within a brushfire hazard area. The NYC Department of Parks and Recreation has posted the Community Wildfire Protection Plan for the East Shore of Staten Island on its website. Applicant should review the recommendations in the plan, particularly the sections regarding structural ignitability and home construction. Applicant is advised to utilize non-combustible and fire resistant materials for the construction of the proposed homes. There are commonly available fire proof and fire resistant materials which can increase the safety of homeowners living in brushfire hazard zones. New construction projects in brushfire hazard zones have the opportunity to develop plans utilizing non-combustible and fire resistant materials for the entire exterior of new structures at the beginning of the project. Please provide references to the fireproof or fire resistant materials to be used on the project plans.

---

*Please submit requested information by* _____
*No further action can be taken until all of these materials are received.*

Contact Person:
TAMARA A GRECO                              Signature: *Terry Geo*
NYSDEC
47-40 21st St                              Date: December 23, 2015
Long Island City, NY 11101

Telephone Number: (718) 482-4997

EXHIBIT "C"

New York State Department of Environmental Conservation
## Notice of Incomplete Application - This is NOT a Permit

*Application ID:* 2-6404-01325/00001                          *Batch Number:*  786705

*Facility:*  Annunziata Prop B 3475 L 40
401 Patterson Ave
Staten Island, NY 10305

*Applicant:* Richard Annunziata          *Owner ID:* 1756730
30 Freneau Ave
Matawan, NJ 07747

*Permit(s) Applied for:*  1 - Article 24 Freshwater Wetlands

*Project Location:* in STATEN ISLAND in RICHMOND COUNTY

**Your application for Permit is incomplete.  The following items are required:**

1. Applicant proposes to build a one family detached residence with associated parking pad, drywells, accessory structures, etc. within a regulated adjacent area of a Class I freshwater wetland. To meet the standards for permit issuance set forth in 6NYCRR 663.5, it is the Applicant's responsibility to demonstrate that the proposed project is:
a. Compatible with preservation, protection and conservation of the wetland and its benefits;
b. will result in no more than an insubstantial degradation to or loss, of any part of the wetland;
c. is compatible with public health and welfare.
Information must be provided which demonstrates that the application meets the standards for permit issuance set forth in Part 663.

2. Alternative Analysis: Proposed plan depicts an extremely reduced yard area and very limited setback from the wetland boundary. Can the project be reduced or modified to allow greater setback from the wetland boundary and increase useable yard space? What alternatives have been considered for the project? Provide an alternatives analysis.

3. Project Plans: The proposed setback from the wetland boundary is insufficient and far less than the setback required for neighboring developments. The proposed useable yard space appears to be impractical. The severely limited rear yard area will also create conditions that lead to encroachment into the proposed Area of No Land Alteration. The project should be revised to increase the setback from the Freshwater Wetlands and provide greater usable yard space.

4. Drywells & Stormwater Disposal: A review of NYSDEC records confirms the plan notation about ground water location at 6 feet below surface for adjacent lot 41. Why are the drywells proposed to be 5 feet deep? Drywell installation should be at least 3 feet above seasonal high groundwater. Please revise the size of the drywell.

5. Area of No Land Alteration:
The proposed Area of No Land Alteration doesn't provide enough development setback from the wetland. There is only 5 feet from the closest wetland point to the rear useable yard. Neighboring development provided a 22 foot setback from the wetland boundary. Applicant should revise the plans to allow for a greater setback from the wetland.

6. Deed Restriction:
Submit a draft deed restriction for the Area of No Land Alteration for review. Sample Language

is attached.

7. Flood Zone:
The subject lot lies within the damage zone from Hurricane Sandy. What flood protection measures does the Applicant plan on utilizing for the proposed structure? Are any of the proposed structural flood protection measures additional to those mandated by building codes? Does the Applicant plan on utilizing special protection measures for utilities, such as electrical systems, sanitary systems, etc.? Do the proposed base flood elevations meet the Federal Emergency Management Agency's post hurricane recommendation?

8. Fireproof Construction:
The subject property lies within a brushfire hazard area. The NYC Department of Parks and Recreation has posted the Community Wildfire Protection Plan for the East Shore of Staten Island on its website. Applicant should review the recommendations in the plan, particularly the sections regarding structural ignitability and home construction. Applicant is advised to utilize non-combustible and fire resistant materials for the construction of the proposed homes. There are commonly available fire proof and fire resistant materials which can increase the safety of homeowners living in brushfire hazard zones. New construction projects in brushfire hazard zones have the opportunity to develop plans utilizing non-combustible and fire resistant materials for the entire exterior of new structures at the beginning of the project. Please provide references to the fireproof or fire resistant materials to be used on the project plans.

---

*Please submit requested information by _____*
*No further action can be taken until all of these materials are received.*

Contact Person:
TAMARA A GRECO
NYSDEC
47-40 21st St
Long Island City, NY 11101

*Telephone Number:* (718) 482-4997

*Signature:* _____

*Date:* December 23, 2015

EXHIBIT "D"

**calvanico associates...** architectural and engineering p.c.
2535 victory blvd.      staten island, n.y. 10314
Tel: (718) 494-0444   Fax: (718) 494-9884
# 7568

February 9, 2016

Ms. Tamara A. Greco
Division of Environmental Permits
N.Y.S. Department of Environmental Conservation
Region 2 Headquarters
47-40 21st Street
Long Island City, NY 11101

Re:    DEC# 2-6404-01325/00001
       Block: 3475, Lot: 40
       401 Patterson Avenue, Staten Island, NY

Dear Ms. Greco:

In response to your letter dated 12/23/15 and meeting dated January 19, 2016, please be advised of the following:

1.  a) The project is compatible with the preservation, protection and conservation of the wetland and its benefits since the storm water balance proposed via overland flow and drywells is comparable to that which previously existed. Deed restricted area is being created at rear of property with additional planting to provide a buffer to wetland.

    b) The project results in insubstantial degradation to or loss to the wetland since approximately half of the lot will remain undeveloped including all areas of the flagged wetland. This portion of wetland is a narrow isolated sliver which is practically separated from main wetland to the west.

    c) The project is compatible with public health and welfare since proposed residential use on property is consistent with adjacent properties. Project fronts upon existing public street with existing utilities which will be utilized. Development of this lot completes the street scape for this block and prohibits public access to wetland for unwanted activities like illegal dumping, staging areas or vehicular access.

2.  Project has been reduced to allow for greater yard area with the elimination of proposed open wood deck and reduction of rear right side basement / first floor area with 2' 2nd floor cantilever. Access to rear yard will now be from basement at grade level. This increases setback to wetland from building to 15' at closest point.

3.  Proposed setback to main wetland boundary (Flag 3) at 25' is comparable to that which was approved for adjacent lot 5 (21' to Flag 1 for Southerly house 405) and (25' +/- to Flag 3 for Northerly house 397).Front / side yard setbacks are at minimum requirements and proposed building occupies a minimally marketable footprint at

1

less than 600 sf so yard spaces cannot be increased any further. Future homeowners will have to utilize the miles of boardwalk and city park area that are within walking distance from proposed residence across Father Capodanno Boulevard for recreational activity. .

4. The drywells proposed under this application are located at front of lot along street line of Patterson Avenue, which is approximately 3'+/- higher in elevation than elevation at rear of adjacent lot were borings and ground water elevation were previously established. Drywells for subject lot are therefore deeper in elevation to account for this difference and are located 3' above ground water table as per detail.

5. Deed restriction area and distance from wetland to usable yard has been increased from original submittal to 7.5'. Distance to Flags 1 and 3 (which is the bulk of wetland) from adjacent developments are comparable to proposed development as enumerated in comment 3 above.

6. Draft Deed Restriction is herewith submitted.

7. The elevations of proposed residence comply with the preliminary FIRM maps developed after Hurricane Sandy, which are more restrictive than the current maps. Flood openings and location of electrical/mechanical systems will comply with current NYC Building Code and Zoning Resolution requirements which were revised after Hurricane Sandy. Check Valve will be added to house trap to minimize back-ups from city sewer into residences in future emergency situations.

8. The draft community wildfire protection plan has been reviewed and plan has been revised to indicate that owner has decided to use protected 1-hour wood frame construction for all exterior walls to add an additional level of Fire Protection. Section diagrams also indicate that a class "c" roof, double pane windows and non-combustible siding will be utilized per draft recommendations.

If you should require any additional items, please do not hesitate to contact me at (718) 494-0444.

Very truly yours,

Peter J. Calvanico, P.E.
AD/ar
Enclosures.

2

EXHIBIT "E"

**New York State Department of Environmental Conservation**
**Division of Environmental Permits**
NYSDEC Region 2 Headquarters
47-40 21st St
Long Island City, NY 11101-5401
(718) 482-4997



March 09, 2016

Richard Annunziata
30 Freneau Ave
Matawan, NJ 07747

Re:  DEC ID # 2-6404-01325/00001
Annunziata Prop B 3475 L 40

Dear Applicant :

Please be advised that your application for a DEC permit(s) is complete and a technical review has commenced. Notice and the opportunity for public comment is required for this application. Enclosed is a Notice of Complete Application for your project. Please have the Notice published in the newspaper identified below once during the week of 03/14/2016 on any day Monday through Friday.

STATEN ISLAND ADVANCE
950 FINGERBOARD RD
STATEN ISLAND, NY 10305

On the Notice of Complete Application, that information presented between the horizontal lines, on the enclosed page(s) should be published. Do not print this letter or the information contained below the second horizontal line. Please request the newspaper publisher to provide you with a Proof of Publication for the Notice. Upon receipt of the Proof of Publication promptly forward it to this office. You must provide the Proof of Publication before a final decision can be rendered on your application. You are responsible for paying the cost of publishing the Notice in the newspaper.

Notification of this complete application is also being provided by this Department in the NYSDEC Environmental Notice Bulletin.

This notification does not signify approval of your application for permit. Additional information may be requested from you at a future date, if deemed necessary to reach a decision on your application. Your project is classified major under the Uniform Procedures Act. Accordingly, a decision is due within 90 days of the date of this notice unless a public hearing is held, which may extend this time frame. If a public hearing is necessary, you will be notified.

If you have any questions please contact me at the above address or phone number above.

Sincerely,

TAMARA A GRECO
Division of Environmental Permits

THIS IS NOT A PERMIT



## New York State Department of Environmental Conservation
## Notice of Complete Application

*Date:* 03/09/2016

*Applicant:* Richard Annunziata

*Facility:* Annunziata Prop B 3475 L 40
401 Patterson Ave
Staten Island, NY 10305

*Application ID:* 2-6404-01325/00001

*Permits(s) Applied for:* 1 - Article 24 Freshwater Wetlands

*Project is located:* in RICHMOND COUNTY

*Project Description:*
The applicant proposes to construct a one-family house with a deed restricted area within the NYSDEC regulated freshwater wetlands adjacent area of NYSDEC Class I regulated Freshwater Wetland NA-9 (Dongan Hills). The project site is located on Block 3475 Lot 40, Staten Island.

*Availability of Application Documents:*
Filed application documents, and Department draft permits where applicable, are available for inspection during normal business hours at the address of the contact person. To ensure timely service at the time of inspection, it is recommended that an appointment be made with the contact person.

*State Environmental Quality Review (SEQR) Determination*
Project is not subject to SEQR because it is a Type II action.

*SEQR Lead Agency* None Designated

*State Historic Preservation Act (SHPA) Determination*
The proposed activity is not subject to review in accordance with SHPA. The application type is exempt and/or the project involves the continuation of an existing operational activity.

*Coastal Management*
This project is located in a Coastal Management area and is subject to the Waterfront Revitalization and Coastal Resources Act.

Gmail - LLC EXAMPLE



New York State Department of Environmental Conservation Notice of Complete Application Date: 03/09/2016 Applicant: Richard Annunziata Facility: Annunziata Prop B 3475 L 40, 401 Patterson Ave Staten Island, NY 10305 Application ID: 2-6404/01325/00001 Permit(s) Applied for: 1 - Article 24 Freshwater Wetlands Project is located in RICHMOND COUNTY Project Description: The applicant proposes to construct a one-family house with a flood restricted area within the NYSDEC regulated freshwater wetlands adjacent area of NYSDEC Class I regulated Freshwater Wetland NA-9 (Dongan Hills). The project site is located on Block 3475 Lot 40, Staten Island. Availability of Application Documents: Filed application documents, and Department draft permits where applicable, are available for inspection during normal business hours at the address of the contact person. To ensure timely service at the time of inspection, it is recommended that an appointment be made with the contact person. State Environmental Quality Review (SEQR) Determination Project is not subject to SEQR because it is a Type II action. SEQR Lead Agency None Designated State Historic Preservation Act (SHPA) Determination The proposed activity is not subject to review in accordance with SHPA. The application type is exempt and/or the project involves the continuation of an existing operational activity. Coastal Management This project is located in a Coastal Management area and is subject to the Waterfront Revitalization and Coastal Resources Act. Availability For Public Comment Comments on this project must be submitted in writing to the Contact Person no later than 03/31/2016 or 15 days after the publication date of this notice, whichever is later. CC List for Complete Notice Contact Person: TAMARA A GRECO NYSDEC 47-40 21st St Long Island City, NY 11101-5401 (718) 482-4997

Kristy Calabro | Classified | 950 Fingerboard Rd. SI, NY 10305

| P. 718.720.6000 | E. kcalabro@siadvance.com

STATE OF NEW YORK    }
                     }
                     } SS.
                     }
COUNTY OF RICHMOND }

        being duly sworn, says that she is the Legal Advertising Clerk of the **STATEN ISLAND ADVANCE**, a daily newspaper printed and published in the County of Richmond, State of New York: that a **NOTICE**, of which the annexed is a printed copy, has been regularly published in said newspaper

For (    1  ) ( time(s) on the following date(s) to wit:

   March 23, 2016

commencing on the 23rd day of March

and the last insertion being March 23, 2016

_____

Sworn to before me this 23rd day of March

_____

0001037953

Arthur Silverstein
Notary Public, State of New York
No. 43-4646374
Qualified in Richmond County
Commission Expires

# EXHIBIT "F"

**NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION**

Division of Environmental Permits, Region 2
47-40 21st Street, Long Island City, NY 11101
P: (718) 482-4997 I F: (718) 482-4975
www.dec.ny.gov

Certified Mail – Return Receipt Requested

June 2, 2016

Richard Annunziata
30 Freneau Avenue
Matawan, NJ 07747

Re:   NYSDEC Permit Application No. 2-6404-01325/00001
      Annunziata Prop
      Staten Island, NY
      ECL Article 24 – Freshwater Wetlands
      <u>NOTICE OF PERMIT DENIAL</u>

Dear Mr. Annunziata:

NYSDEC is in receipt of your application for a permit pursuant to Article 24 of the Environmental Conservation Law (the Freshwater Wetlands Act), which was initially submitted by you on November 20, 2015 and resubmitted on February 10, 2016. Your application is hereby denied, as the proposed project would not be compatible with the preservation, protection, and conservation of the relevant freshwater wetlands and their benefits; would not be compatible with the public health and welfare; would not minimize degradation to, or loss of, any part of the wetlands or adjacent area; would not minimize any adverse impacts on the functions and benefits that the wetlands provides; and would not satisfy a compelling social or economic need.

A.    Background of the Site and the Proposed Project

Your application proposes the construction of a detached twenty-seven by twenty-two feet single-family residence with drywells and a city sanitary connection, as well as the deposition and grading of fill, on two neighboring lots identified as Richmond County Block 3465, Lots 39 and 40 (the "Site") (as per the Site plan prepared by Calvanico Associates Architectural and Engineering, P.C., last revised on February 9, 2016). The Site measures approximately eighty-five by forty feet and consists entirely of freshwater wetlands and freshwater wetlands adjacent area. According to your application, the front half of the Site, which consists of freshwater wetlands adjacent area, would be developed for the construction of the residence. The rear half of the Site, which consists



Annunziata Prop

2-6404-01325/00001

of freshwater wetlands, would be deed-restricted to prevent any future development at that portion of the Site. The Site currently is owned by Ms. Marie Gerrish.

The freshwater wetlands at the Site is identified as NA-9, Dongan Hills, which is the third largest wetlands in New York City classified as emergent marsh. NA-9, Dongan Hills is a Class I freshwater wetlands, as defined by 6 NYCRR § 664.5(a), because it has:

(i) one Class I wetlands characteristic, in that it is the resident habitat of endangered or threatened species;

(ii) two or more Class II wetlands characteristics, in that it is associated with permanent open water outside the wetlands, prevents significant flooding of a lightly-developed area, and is within an urbanized area; and

(iii) one or more Class III characteristics, in that it is an emergent marsh with over two-thirds Phragmites and is one of the three largest wetlands of the same cover type within New York City.

Class I wetlands, including NA-9, Dongan Hills, "provide the most critical of the State's wetlands benefits." 6 NYCRR § 663.5(e). Specifically, Class I wetlands provide flood and storm control, fish and other wildlife habitat, pollution treatment, open space and aesthetic benefits, and nutrient resources. Accordingly, "reduction of [Class 1 wetlands] is acceptable only in the most unusual circumstances," meaning that "[p]ermits for the vast majority of activities that could not avoid reducing a benefit provided by a Class I wetland would not be approved." 6 NYCRR § 663.5(e),(f). The word "reducing" in this context means that a permit application may be denied even if the proposal would result in even only "the partial loss . . . of a benefit." *See* 6 NYCRR § 663.5(f)(4)(i).

The activities proposed in your application are regulated activities pursuant to the Freshwater Wetlands Act. The proposed activities fall within the following categories, as described in 6 NYCRR § 663.4(d), Procedural Requirements for Various Activities, Item numbers:

(20) Filling in the adjacent area to wetlands, listed as P(N) (meaning that a permit is required for the activity and that such activity is usually incompatible with the functions and benefits of the relevant wetlands);

(21) Installing or creating dry wells in adjacent area to wetlands, also listed as P(N);

(25) Grading and dredging in adjacent area to wetlands, also listed as P(N);  and

(42) Constructing a residence or related structures in adjacent area to wetlands, also listed as P(N).

2

Annunziata Prop

2-6404-01325/00001

The burden of showing that regulated activities will comply with the policies and provisions of the Freshwater Wetlands Act and the accompanying regulations at 6 NYCRR Part 663 "rests entirely on the applicant." 6 NYCRR § 663.5(a).

## B. The Proposed Project Fails to Meet Permits Standards

### 1. The Proposed Project Fails the Three-Part Compatibility Evaluation

In determining whether to grant an Article 24 permit, 6 NYCRR § 663.5(e)(1) requires that all regulated activities listed as P(N) be evaluated pursuant to a three-part compatibility evaluation. Regulated activities listed as P(N) may be permitted if the activities:

(i) would be compatible with the preservation, protection, and conservation of the wetlands and their benefits;

(ii) would result in no more than insubstantial degradation to or loss of any part of the wetlands; and

(iii) would be compatible with the public health and welfare.

6 NYCRR § 663.5(e)(1) (collectively, "Compatibility Standards").

The activities proposed in your application fail to meet the first and third of the three Compatibility Standards. First, the activities would not be compatible with the preservation, protection, and conservation of the wetlands and their benefits. The residence in your application would be located only 7.5 feet away from the freshwater wetlands line and entirely within a freshwater wetlands adjacent area. This buffer distance from the wetlands is not large enough to mitigate the detrimental effects of nearby human activities, such as noise, artificial lighting, and pesticide and fertilizer application, on the freshwater wetlands. A buffer distance of only 7.5 feet also is inconsistent with the permits previously issued for neighboring properties. For example, the permit issued in 2013 for Block 3475, Lot 37 allows for a twenty-foot buffer distance between the residence and the freshwater wetlands line.

The activities proposed in your application would eliminate almost all of the freshwater wetlands adjacent area at the Site, thereby significantly reducing the area available for flood waters to overflow during an extreme wet weather event. The Site and surrounding area are flood-prone (for example, the area was affected by the tidal surge during Hurricane Sandy). Such a substantial reduction in freshwater wetlands adjacent area at the Site would put the residence proposed in your application, as well as the existing neighboring residences, at greater risk for flooding. Elimination of freshwater wetlands adjacent area within a flood-prone area is inconsistent with state and city post-Hurricane Sandy efforts to reduce the flood risks faced by homeowners. For these reasons, the activities proposed in your application would not be compatible with the

3

Annunziata Prop                                         2-6404-01325/00001

preservation, protection, and conservation of the wetlands and their benefits and, accordingly, fail to meet the first Compatibility Standard.

Additionally, the activities proposed in your application would not be compatible with the public health and welfare. Public health and welfare includes "consistency . . . with physical health . . . and . . . consistency with related Federal, State and local laws, regulations and policies." 6 NYCRR § 663.5(f)(1). According to 6 NYCRR § 663.5(f)(1), "[i]f a proposed activity is inconsistent with physical health, or with any related laws, regulations and government policies, this would weigh against issuing a permit under the [Freshwater Wetlands Act] until such conditions were met that would make the proposed activity consistent with these provisions." As explained above, the activities proposed in your application would make the Site and surrounding area more vulnerable to flooding. The activities also are not consistent with the permits previously issued for neighboring properties and state and city post-Hurricane Sandy efforts to reduce the flood risks faced by homeowners. For these reasons, the activities proposed in your application would not be compatible with the public health and welfare and, accordingly, fail to meet the third Compatibility Standard.

## 2. The Proposed Project Fails the Secondary Weighing Test

If proposed regulated activities listed as P(N) fail to meet the Compatibility Standards and would occur within Class I wetlands, as is the case here, 6 NYCRR § 663.5(e)(2) states that such activities may be permitted only if the activities meet all of the following requirements ("Weighing Standards"):

(i) the activities would be compatible with the public health and welfare;

(ii) the activities would be the only practicable alternative that could accomplish the applicant's objectives;

(iii) the activities have no practicable alternative on a site that is not a freshwater wetlands or adjacent area;

(iv) the activities would minimize degradation to, or loss of, any part of the wetlands or adjacent area;

(v) the activities would minimize any adverse impacts on the functions and benefits that the wetlands provides; and

(vi) the activities would satisfy a compelling economic or social need that clearly and substantially outweighs the loss of or detriment to the benefits of the Class I wetlands.

6 NYCRR § 663.5(e)(2). This secondary weighing test weighs "need against benefits lost." 6 NYCRR § 663.5(d).

4

Annunziata Prop

2-6404-01325/00001

The activities proposed in your application fail to meet the first, fourth, fifth and last of the Weighing Standards. As explained above, the activities proposed in your application would not be compatible with the public health and welfare and, accordingly, fail to meet the first Weighing Standard.

Additionally, the activities proposed in your application would not minimize degradation to, or loss of, any part of the wetlands or adjacent area. As discussed above, the activities proposed in your application would eliminate most of the freshwater wetlands adjacent area at the Site. Your application fails to demonstrate that the proposed residence would be the minimum size possible. Any assertion that the proposed residence would be the "minimally-marketable" size is not dispositive, as "the Department is not responsible for ensuring that the Applicant receives any particular return on his investment." Ruling, Matter of Herbert Ellis, NYSDEC Project No. 4-0126-00349/00001 (March 3, 1998). This notion is especially relevant when an applicant is merely considering the possibility of a future real estate investment and has not yet acquired the relevant property, as is the case here. Therefore, the activities proposed in your application would not minimize degradation to, or loss of, any part of the wetlands or adjacent area and, accordingly, fail to meet the fourth Weighing Standard.

Similarly, the activities proposed in your application would not minimize any adverse impacts on the functions and benefits that the wetlands provides. The activities proposed in your application would eliminate most of the freshwater wetlands adjacent area at the Site, thereby reducing the area available for flood waters to overflow during an extreme wet weather event. Such a reduction would significantly diminish the flood control benefit provided by the freshwater wetlands at the Site. Therefore, the activities proposed in your application would not minimize any adverse impacts on the functions and benefits that the wetlands provides and, accordingly, fail to meet the fifth Weighing Standard.

Additionally, the activities proposed in your application would not satisfy a compelling economic or social need that clearly and substantially outweighs the loss of or detriment to the benefits of the Class I wetlands. An economic or social need is compelling only if "the proposed activity carries with it not merely a sense of desirability or urgency, but of actual necessity," "the proposed activity must be done," and the proposed activity is "unavoidable." See 6 NYCRR § 633.5(f)(4)(ii). The construction of a residence, at property not yet owned by the prospective homeowner, as is the case here, is not of actual necessity nor is it unavoidable. Even when the prospective homeowner has already acquired the relevant property, the applicant's inability to construct a residence at the property does not constitute a financial hardship, if the "applicant knew or should have known, prior to his acquisition of the lot, that it might be within a freshwater wetland." See Commissioner Order, Matter of Brian Zazulka, NYSDEC Project No. 2-6405-00425/00001 (December 27, 2004). Accordingly, the activities proposed in your application would not satisfy a compelling economic or social need.

Even when the economic and social need for a proposed activity is considerable, which has not been established here, the economic and social burden that would be imposed

Annunziata Prop

2-6404-01325/00001

on the public must be considered as well. See 6 NYCRR § 663.5(f)(3). As discussed above, the construction of the proposed residence would increase the likelihood of the surrounding area experiencing destructive flooding, which would threaten multiple existing residences. Accordingly, even if the activities proposed in your application did satisfy a compelling economic or social need, the corresponding economic and social burden would weigh heavily in favor of not issuing a permit for the activities. For these reasons, the activities proposed in your application would not satisfy a compelling economic or social need that clearly and substantially outweighs the loss of or detriment to the benefits of the Class I wetlands and, accordingly, fail to meet the last Weighing Standard.

## C. Conclusion

In conclusion, your proposal fails both the three-part compatibility evaluation and the secondary weighing test required by 6 NYCRR § 663.5. Specifically, the proposal would not be compatible with the preservation, protection, and conservation of the relevant freshwater wetlands and their benefits; would not be compatible with the public health and welfare; would not minimize degradation to, or loss of, any part of the wetlands or adjacent area; would not minimize any adverse impacts on the functions and benefits that the wetlands provides; and would not satisfy a compelling social or economic need. Accordingly, NYSDEC is denying issuance of the permit.

Please be advised that 6 NYCRR Part 621 provides that an applicant may request a public hearing if a permit is denied or contains conditions unacceptable to the applicant. Any such request must be made in writing to me at the letterhead address within thirty calendar days of the date of this denial. A copy should be sent to the Chief Administrative Law Judge at NYSDEC, 625 Broadway, 1st Floor, Albany, NY 12233-1550.

Sincerely,

Stephen A. Watts III
Regional Permit Administrator

cc: Peter J. Calvanico, P.E., Calvanico Associates Architectural and Engineering, P.C.

FedEx

fedex.com 1.800.GoFedEx 1.800.463.3339

FedEx
Express
US Airbill

NEW Package

**1** From
Date
Sender's Name
Company    Audrey Hersh
Address    185 Ridge Roth Drive
City       Upper Saddle NJ 07330

**2** Your Internal Billing Reference

**3** To
Recipient's Name  Clerk-Discount
Company    Southern District New York
Address    500 Pearl Street
City       New York NY 10007

**4** Express Package Service
From    0200

**5** Packaging
FedEx Envelope

**6** Special Handling and Delivery Signature Options

**7** Payment    Bill to:

FedEx Tracking Number
8081 8320 2077

Recipient's Copy

fedex.com 1.800.GoFedEx 1.800.463.3339

E3 PCTA

8081 8320 2077

TUE - 14 JUN 10:30A
PRIORITY OVERNIGHT

10007
NY-US
EWR

◄ Insert shipping
   document here.